77620. IN THE INTEREST OF M. O. B.
(378 SE2d 898)

CARLEY, Chief Judge.

Prior to a hearing to determine appellant's delinquency, a motion to dismiss the juvenile court proceedings was filed. Appellant brings this direct appeal from the juvenile court's denial of his motion to dismiss.

The initial issue for resolution is whether the denial of the motion to dismiss the delinquency proceedings is directly appealable. There is no statutory or decisional authority which explicitly recognizes this court's jurisdiction to hear a direct appeal from such an interlocutory order. Appellant based his motion to dismiss solely upon an alleged failure to comply with the time requirements of OCGA § 15-11-26 (a). Compare *Ould v. State*, 186 Ga. App. 55 (366 SE2d 392) (1988) (motion to dismiss criminal proceedings based upon denial of the constitutional right to speedy trial). In urging that this court has jurisdiction to hear his direct appeal, appellant analogizes the denial of his motion to the denial of a motion to dismiss which is predicated upon OCGA § 17-7-170.

It is true that the denial of an OCGA § 17-7-170 motion is directly appealable. Subsection (b) of that provision provides, in relevant part, as follows: "If the person is not tried when the demand is made or at the next succeeding regular court term thereafter, . . . he

shall be absolutely discharged and *acquitted* of the offense charged in the indictment or accusation." (Emphasis supplied.) Thus, in *Smith v. State*, 169 Ga. App. 251, 252 (1) (312 SE2d 375) (1983), it was held that the denial of an OCGA § 17-7-170 motion was directly appealable because such a ruling "does not constitute the trial court's refusal to grant the accused an acquittal and thereby terminate the original prosecution. Rather, the denial of an OCGA § 17-7-170 [cit.] motion constitutes the trial court's determination that the prosecution has not *already* resulted in an automatic acquittal of the accused by operation of law. Therefore, to the extent that the denial of an OCGA § 17-7-170 [cit.] motion allows the prosecution to proceed, it is an adjudication that the impending trial of the accused will not place him in jeopardy for the commission of a crime for which he has previously been acquitted." (Emphasis in original.) The Supreme Court subsequently endorsed this reasoning. "In *Smith*, supra, an analogy between double jeopardy and the speedy trial requirements of OCGA § 17-7-170 was drawn and, we think correctly so." *Hubbard v. State*, 254 Ga. 694, 695 (333 SE2d 827) (1985).

In stark contrast to OCGA § 17-7-170, however, there is no explicit language in OCGA § 15-11-26 which mandates that the failure to comply with the statutory time limits provided therein will result in an adjudication of the juvenile's non-delinquency by operation of law. In the absence of such statutory language, it follows that "the denial of an OCGA § [15-11-26] motion [does not constitute] the [juvenile] court's determination that the [delinquency proceedings have] *already* resulted in an automatic acquittal of the [juvenile] by operation of law. Therefore, to the extent that the denial of an OCGA § [15-11-26] motion allows the [delinquency proceedings] to proceed, it is [not] an adjudication that the impending [delinquency hearing] will . . . place [the juvenile] in jeopardy for the commission of a [delinquent act] for which he has previously been acquitted." *Smith v. State*, supra at 252 (1). (Emphasis in original.) Thus, rather than *Hubbard*, supra, or *Smith*, supra, the authority which is controlling in the present case is *Austin v. State*, 179 Ga. App. 235 (345 SE2d 688) (1986), wherein the direct appeal from the denial of a plea in bar was dismissed because "there has been *no prior adjudication favorable to the appellant* . . . , by operation of law or otherwise." (Emphasis supplied.)

It is a legislative function to establish the jurisdictional requirements for the appealability of cases. The appellate courts have heretofore given due consideration to the finality requirement which otherwise serves as a statutory limitation on direct appealability. Neither *Hubbard*, supra, nor *Smith*, supra, are authority for the proposition that the denial of any and all motions to dismiss would be directly appealable. The direct appealability of interlocutory orders remains

the exception rather than the rule. All that has been previously recognized is "that 'a broader construction' of direct appealability 'is appropriate where the order appealed from is one denying a plea of double jeopardy[,]' " and that the denial of an OCGA § 17-7-170 motion is such an order. *Smith v. State*, supra at 251 (1). However, for the reasons discussed, the denial of an OCGA § 15-11-26 motion cannot be analogized to the denial of an OCGA § 17-7-170 motion. "Because we conclude that this issue is one for which a certificate of immediate review and petition for interlocutory appeal were required, . . . the appeal must be dismissed. [Cits.] This is not a question involving speedy trial rights under OCGA § 17-7-170, which would be directly appealable. [Cit.]" *Miller v. State*, 180 Ga. App. 710, 711 (350 SE2d 313) (1986).

*Appeal dismissed. Sognier, J., concurs. Deen, P. J., concurs specially.*

DEEN, Presiding Judge, concurring specially.

This case is illustrative of a prospective appellant walking on egg shells or minefields through the narrow winding passageway of a spaghetti junction, while seriously striving and seeking to select and identify the proper pathway of either an interlocutory, discretionary, or a direct appeal. Acknowledging that statutory requirements and conditions precedent in selecting the appropriate appellate process are jurisdictional, the fact that our published reports, as well as unpublished opinions, are liberally littered with the corpses of cases where the death penalty of dismissal has been speedily carried out, confirms the difficulties, pitfalls, and dangers of one's seeking to maneuver around on the one hand, the "narrow path between the Scylla . . . and the Charybdis" on the other. *Brogdon v. McMillan*, 116 Ga. App. 34 (2) (156 SE2d 828) (1967). If one single appellate technicality and hurdle is avoided and overcome in this area, forty-nine other damnations sometime seem to appear to snag appellant's effort to appeal. "Forty-nine distinct damnations; one sure if another fails." *Coolik v. Hawk*, 133 Ga. App. 626, 628 (212 SE2d 7) (1974).

This much at least seems to obtain. *Legislative* directions and requirements as to jurisdiction must receive strict, serious, and sound scrutiny and exacting compliance. In contrast, our *court* directions, rules, and court orders directed to appellants, on the other hand, may be taken lightly, cavalierly, or many times totally ignored and mostly without any type of sanction. Endless extensions are enlisted and extravagantly indulged. In sending out its docketing notice, pursuant to court rule, our court directs, instructs, or orders appellant to file a brief and enumeration of errors within twenty days. On many occasions this time limit is ignored. Often an extension of time is requested and almost always an appellant is provided additional time in

an extension. If the latter court order granting an extension deadline is also ignored by appellant, the court still does not impose sanctions of contempt or dismiss the appeal until further action of the court. Once again, the court issues still another order providing an extension of five additional days to file before we indicate the case will theoretically be dismissed if there is a noncompliance. If the case is a civil case, the court, by another subsequent court order, then and only then, dismisses the case. If the appeal is a criminal case, although all designated time limits have been ignored, we generally nevertheless always subsequently consider all the merits of the case. Rarely, if ever, are repeated threatened sanctions of dismissal and contempt considered, or contempt hearings held, whether civil or criminal cases are involved. Our court orders, in contrast to legislative direction, may rightfully appear as "a toothless tiger" and a "fish that cannot swim." *Tanner v. State*, 160 Ga. App. 266, 267 (287 SE2d 268) (1981).

Seemingly, the same equal fairness of either strict scrutiny toward all appeals should obtain, or a similar type of liberal treatment by the court toward all litigants in rendering a decision on the merits of every case sought to be appealed should be our goal. All appellants should be fed out of the same spoon. This might require statutory changes or court-rule modifications allowing for issuing court orders permitting out-of-time perfecting of an appeal by an amendment relating back, secured from the trial court. At this time, the mechanics, whether statutory or by court rule, of out-of-time jurisdictional corrections or perfecting of an appeal by amendments relating back do not exist. With these observations, I respectfully concur in the judgment of the majority opinion in the instant case.

DECIDED FEBRUARY 10, 1989 —
REHEARING DENIED FEBRUARY 27, 1989 —

*Billy L. Spruell*, for appellant.

*Lewis R. Slaton*, District Attorney, *George J. Robinson, Jr., Joseph J. Drolet, Richard E. Hicks*, Assistant District Attorneys, for appellee.